## Ezra Sawyer *et ux. versus* Aaron Baldwin *et al.*

Devise : Further, my will is, that my said trustees shall receive and hold all the property, rents and income not hereinbefore particularly disposed of, for the benefit of my two sisters, N. H. and P. H., and their children and their husbands respectively, in manner following, viz., to pay to each of my said sisters for and during the term of their respective lives the sum of 150 dollars annually, and after the decease of either of my said sisters, then to pay to the husband of such deceased sister, if he survives her, the sum of 75 dollars annually during his life or until he shall marry again ; and at the decease of my said sister N. H. the one half of all of said fund so to be held for my said two sisters, their children and husbands, is to be held by my said trustees for the use of her the said N. H.'s children, and to be paid or conveyed to her children and grandchildren in manner following, viz., one half of her said share *to her daughter E. S.,* the wife of E. S., *or to her children then living ;* and the other half to the children of, E. W. H., son of said N. H., if any he have living, and if he have no children living, then to go to such person or persons as would be his legal heirs if he were deceased. The sister N. H. died, having survived her husband, and at her death, her daughter and her daughter's children, and her son E. W. H. and his children, were living. It was *held,* that one half of the share was to be paid to the daughter E. S., to the exclusion of her children.

Upon a bill in equity by husband and wife to recover a legacy to the wife, *it seems,* this Court have power to require the husband to make a suitable provision for the wife out of the sum to be recovered.

But where the testator, though he was acquainted with the husband, did not provide that the legacy should be paid to the separate use of the wife, and there was no suggestion that the husband's character had changed, or that he had become improvident, since the death of the testator, and the wife did not desire to have the property secured to her, but, on the contrary, desired that it might be paid to the husband, the Court refused to exercise such power.

Where a bill in equity to recover a legacy is rendered necessary in consequence of an ambiguity in the terms of the bequest, the costs of suit are not to fall upon the particular legacy, but are to be paid by the executor out of the general assets in his hands.

Bill in equity.

The plaintiffs are Ezra Sawyer and Eliza Sawyer his wife, who sue for themselves and in behalf of William H. Lane, guardian of the children of Edmund W. Houghton. Eliza Sawyer is the daughter of Oliver and Nabby Houghton, both deceased. Edmund W. Houghton is the son of Oliver and Nabby Houghton, and his children are all under age.

The defendants are Aaron Baldwin and the children of Ezra and Eliza Sawyer. Baldwin is the sole acting trustee and executor under the will of Henry Hovey. The children of Ezra and Eliza Sawyer were made parties after the com

.nencement of the suit.    They are under age and defend by a guardian *ad litem*.

The bill alleges, that Henry Hovey, on June 18, 1829, being possessed of a large real and personal estate, made his last will, which was proved on July 13, 1829, appointing Baldwin and three others his executors and trustees, (all of whom except Baldwin declined,) who were to hold all the property not specifically devised, in trust for the purposes mentioned in the will ; that after charging the same with divers legacies, the testator directed as follows : " Further, my will is, that my said trustees shall receive and hold all the property, rents and income, of every description, not hereinbefore particularly disposed of, for the benefit of, and to be conveyed to, my two sisters, Nabby Houghton and Patty Hyde, and their children, and their husbands, respectively, in manner following, that is to say, to pay to each of my said sisters, for and during the term of their respective natural lives, the sum of 150 dollars annually, in half yearly payments, and after the decease of either of my said sisters, then to pay to the husband of such deceased sister, respectively, if he survives her, the sum of 75 dollars annually, during his natural life, or until he shall marry again, and no longer.    And at the decease of my said sister Nabby Houghton, the one half of all of said fund so to be held for my said two sisters, their children and husbands, is to be held by my said trustees for the use of her the said Nabby's children, and to be paid or conveyed to her children and grandchildren in manner following, that is to say, one half of her said share *to her daughter Eliza Sawyer*, the wife of Ezra Sawyer, *or to her children then living* ; and the other half of her said share to the children of Edmund W. Houghton, son of said Nabby Houghton, if any he have living, and if he have no children living, then to go to such person or persons as would be his legal heirs if he were deceased.    And at the decease of my said sister Patty Hyde, the other half of all of said residuary fund is to be held by my said trustees for the use of her the said Patty Hyde's children or grandchildren, and to be paid or conveyed to her children living at her decease," &c.

The bill further alleges, that Oliver Houghton died August

20, 1836, and Mrs. Houghton, February 4, 1837 ; and that Aaron and Patty Hyde are still living ; that the plaintiffs have had six children, all of whom were living at the death of Mrs Houghton, and are now living, but, as the plaintiffs believe, are not entitled to take under the will ; that the plaintiffs became entitled, on the death of Mrs. Houghton, to have a transfer to them of one half of the share held by Baldwin in trust for Mrs. Houghton and her children, and to have the annuity of Aaron and Patty Hyde ·charged upon the fund held for Patty Hyde and her children ; and that in order that Baldwin might pay over to the plaintiffs their share of the trust fund, with safety to himself, certain instruments had been executed and delivered by the plaintiffs, by Lane as guardian, and by Aaron and Patty Hyde and their children, authorizing Baldwin to make distribution among the children and grandchildren of Mrs. Houghton, but that he refuses to do so.

The bill prays that Baldwin, after deducting all charges, &c., may pay over to the plaintiffs one half of the fund held by him for Mrs. Houghton and her children, and that Aaron and Patty Hyde's annuities may be a charge upon their half of the trust fund.

Baldwin, in his answer, states that he is unwilling to take upon himself the responsibility of giving a construction of the will, or of adopting the construction alleged by the plaintiffs to be the true one, or of determining the sufficiency of the instruments to authorize a division of the trust fund, but that he has always been ready to abide by the decision of a competent tribunal in the matter, and now submits to the decision of the Court, whether the plaintiffs, in right of the wife, are entitled to take exclusively of their children the proportion claimed by them, or in conjunction with their children as tenants in common or otherwise ; and if the plaintiffs are entitled, whether the amount to which they may be entitled shall be paid over to the husband until a suitable provision is made thereout for the support of the wife and her children.

*Willard*, for the plaintiffs, insisted that the plaintiffs were entitled to take one half of the trust fund derived through Mrs. Houghton, exclusively of their children ; in other words, that the children could only take by substitution ; that the general

intent of the testator was in favor of Mrs. Sawyer, and if there was any ambiguity in the phrase, " to her daughter Eliza Sawyer *or* to her children then living," the Court would supply the words requisite to enable the plaintiffs to receive the intended benefit, and would add after the word *or*, the words "in case of her death." *Spalding* v. *Spalding*, Cro. Car. 185 ; *Strong* v. *Cummin*, 2 Burr. 767 ; Ram on Wills, 55 ; *Covenhove* v. *Shuler*, 2 Paige, 122 ; *Miller* v. *Phillips*, 5 Paige, 573.   There is nothing in the will to support a claim on the part of the children otherwise than by substitution, unless it be the word " *or* ; " and for that purpose, the construction must be forced by changing " *or* " into " *and*."   But as the sentence reads, it is intelligible, admitting of a plain, distinct interpretation in conformity with the whole scope of the will ; and the Court therefore will not make this change.   Ward on Legacies, 224 ; *Doe* v. *Burnsall*, 6 T. R. 34 ; *Soulle* v. *Gerard*, Cro. Eliz. 525 ; *Price* v. *Hunt*, Pollexf. 645 ; *Walsh* v. *Peterson*, 3 Atk. 193 ; *Fairfield* v. *Morgan*, 5 Bos. & Pul. 58 ; *Jackson* v. *Blanshan*, 6 Johns. R. 54.   But if " *and* " were substituted, still the children would not take.   *Cooper* v. *Thornton*, 3 Bro. C. C. 96 ; *Robinson* v. *Tickell*, 8. Ves. 142.   There is a class of cases very similar to the present, in which the decisions have been in conformity with the view urged by these plaintiffs. *Crooke* v. *De Vandes*, 9 Ves. 197 ; *Montagu* v. *Nucella*, 1 Russell, 165 ; *O'Brien* v. *Heeney*, 2 Edwards's Ch. R. 242.

In regard to making a provision for the support of Mrs. Sawyer and her children, he cited Clancy on Husb. and Wife, 456 to 475 ; *Kenney* v. *Udall*, 5 Johns. Ch. R. 477, and 3 Cowen, 590 ; *Howard* v. *Moffat*, 2 Johns. Ch. R. 206 ; *Fabre* v. *Colden*, 1 Paige, 166 ; *Smith* v. *Kane*, 2 Johns. Ch. R. 303 ; *Van Epps* v. *Van Deusen*, 4 Johns. Ch. R. 74 ; *Krause* v. *Beitel*, 3 Rawle, 199 ; *Bryan* v. *Bryan*, 1 Devereux, 47.   He contended that this Court has not the authority to decree such a provision to be made in the present case ; that it would be in opposition to the manifest intent of the testator ; and if a rule establishing the wife's equity should be sanctioned, she might waive all claim to her equity for herself and her children ; which he said she was ready and desir-

Sawyer
v.
Baldwin.

ous to do, submitting herself to examination, if required, at such time and place as the Court might direct. *Willats* v. *Cay*, 2 Atk. 67 ; Clancy on Husb. and Wife, 525, 526 ; *Murray* v. *Elibank*, 10 Ves. 88 ; *Lloyd* v. *Williams*, 1 Maddock, 458 ; *Wright* v. *Rutter*, 2 Ves. jun. 67 ; *Oldham* v. *Hughes*, 2 Atk. 454 ; *Dimmock* v. *Atkinson*, 3 Bro. C. C. 195 ; *Gullam* v. *Trimbey*, 2 Jac. & Walk. 451, in note ; *Udall* v. *Kenney*, 3 Cowen, 606 ; *Durr* v. *Bowyer*, 2 M'Cord's Ch. R. 369 ; *Jermegan* v. *Baxter*, Maddock and Geldart, 32.

To the point, that the costs of suit are to come out of the *whole* trust fund, where from an ambiguity in the testator's will it becomes necessary to take the direction of the court as to the construction of a particular bequest, he cited *Studholme* v. *Hodgson*, 3 P. Wms. 303 ; *Pearson* v. *Pearson*, 1 Scho. & Lefr. 12 , *Barrington* v. *Tristram*, 6 Ves. 345 ; *Joliffe* v. *East*, 3 Bro. C. C. 25 ; *Rogers* v. *Ross*, 4 Johns. Ch. R. 608 ; *Walter* v. *Patey*, 1 Russell, 375.

*Aylwin* and *Paine*, for the defendant Baldwin.

*W. J. Hubbard* and *Watts*, for the children of the plaintiffs.

*June 29th.*

MORTON J. delivered the opinion of the Court. The principal questions, in this case, arise upon the construction of the will of Henry Hovey deceased. He being possessed of a large estate devised it to trustees to hold and dispose of in the manner particularly pointed out in the will, but which it is not necessary here to repeat. The defendant, being the only trustee who accepted the appointment and having in part executed the trust reposed in him, now holds a large fund to be distributed according to the directions of the will. Upon the general fund, a number of minor legacies and annuities were charged. But the testator's three sisters and their families were the principal objects of his bounty.

In relation to one of them, Mrs. Jenkins, who was provided for out of real estate in Boston, no question arises.

To Mrs. Hyde and Mrs. Houghton annuities were given during their lives ; and should their husbands, or either of them, survive their wives, they also were to receive annuities during life. After the death of these two sisters and their husbands, the fund in the hands of the trustee was to be equally divided between their families. No question in rela

tion to the half of the fund which is to be paid over to the family of Mrs. Hyde, has been brought before us.

In reference to Mrs. Houghton's family the will contains the following clause, " And at the decease of my said sister Nabby Houghton, the one half of all of said fund so to be held for my said two sisters, their children and husbands, is to be held by my said trustees, for the use of her the said Nabby's children, and to be paid or conveyed to her children and grandchildren in manner following, that is to say, one half of her said share to her daughter *E iza Sawyer, the wife of Ezra Sawyer, or to her children then living*, and the other half of her said share to the children of Edmund W. Houghton, son of said Nabby Houghton, if any he have living, and if he have no children living, then to go to such person or persons, as would be his legal heirs, if he were deceased." No doubt arises on the construction of the latter clause. One quarter of the trust fund therein named, is clearly given to those grandchildren of Mrs. Houghton, who were children of her son Edmund W. Houghton.

The plaintiffs in this suit seek to recover the other half of Mrs. Houghton's share, and contend that by the above clause, it was the manifest intention of the testator to give the same to Mrs. Sawyer.

The questions which arise upon this provision in the will are, is Mrs. Sawyer entitled to the whole of this quarter of the trust fund, viz. one half of the moiety given to her mother's family ? or is she entitled to the same in common with her children ? and if so, in what proportions are they to receive it ? is it to be divided *per capita*, or is Mrs. Sawyer to receive one half and her children the other ?

It is obvious that the trustee has no interest in these questions. He is ready and desirous to pay over the funds to whomsoever they belong, and to be relieved from an unpleasant fiducial responsibility. It is very proper that he should have a decree of this Court which will protect him in the execution of this trust. All persons interested being parties to this suit, a final decree will be obligatory on all and fully justify him in complying with it.

The general rules, relative to the construction of wills as

well as other instruments are too well known and too fully established to require discussion or explanation. But each case depends so much upon its own peculiar circumstances, that no great aid can be derived from any rules of construction which have been or can be adopted. The leading object which should always govern us, the polar star which should ever direct our course, is the intention of the testator. Different persons use such different language to express their intentions and use the same terms in such variant and sometimes opposite senses, that no uniform rules will apply to all cases. It frequently is difficult and sometimes impossible to ascertain with certainty the real meaning intended to be expressed by the language used. But whenever the intention of the testator can be satisfactorily ascertained, it must prevail over all mere rules of construction, whether legal or grammatical.

It is apparent, that the testator, in the clause under consideration, did not correctly and fully express his meaning. He manifestly, either used one word when he intended another, or he omitted some words necessary fully to express his intention. If he intended to give the fund to Mrs. Sawyer's children jointly with herself, the disjunctive conjunction *or* must be changed into the copulative conjunction *and*. If he intended to give the whole to Mrs. Sawyer *absolutely*, the words "*or her children*" become mere surplusage. But if he intended to give it to her conditionally, and in a certain event to her children, then some words must have been omitted which would show in what event or upon what condition her right was defeated and her children were to take it.

There can be no doubt that *and* may be substituted for *or* and *vice versâ*, or other words supplied, according to what may appear to be the meaning of the testator. Of the numerous cases, in which words have been rejected, substituted or supplied by the Court, the plaintiffs' counsel has referred to a great number, and quite enough to establish his position.

But the Court will not take such liberty with the language of an instrument, except when the meaning of the author clearly requires it. To ascertain the intention of a testator, we do not confine ourselves to the clause on which the doubt arises, but carefully look through the whole will, at his situa

tion and circumstances, and tne extensive objects upon which the will is to operate, and endeavour from a view of the whole to learn his general objects and purposes, and, if possible, to ascertain his real intent and will. And in reference to the instrument under consideration, it gives us pleasure to find that they all look one way, and that the general design and purpose correspond with what we suppose to be the particular intent in this case.

In reading over this clause of the will, the first impression made upon the mind (and this seldom misleads) is clear and strong, that the testator intended to give this portion of the trust fund, wholly to Mrs. Sawyer, and that her children were to take by substitution only, in the event of her death before the time of payment arrived. This impression we think would be general, if not universal. The doubt arises only from a critical examination of the language.

The expression itself strongly indicates the same meaning. The fund is to be paid over to *Eliza Sawyer or her children, then living.* It cannot be supposed that the testator intended that it should be paid to the *one* or *the other indefinitely.* This would be entirely *uncertain,* and it never could be known to whom to pay it. Nor can it be supposed, without an essential change of language, that his intention was that it should be paid over to *both* his niece *and* her children. *To her* or *her children,* necessarily excludes the one or the other. The disjunctive *or* has unusual force and significancy, and cannot be converted into *and,* but upon clear evidence that the testator's intention requires it. This evidence, we think, is wholly wanting.

Mrs Sawyer was educated by the testator ; seemed to be a particular object of his favor, and to possess a large share of his confidence. In the next sentence, the testator, not having the same confidence in her brother, and intending to give the other moiety of Mrs. Houghton's share to his children and to pass over him, found no difficulty in expressing this intention. His attention therefore, while preparing this clause, was drawn to the distinction between his nephew and niece and their children ; and if he had intended to make a bequest directly to the children of Mrs. Sawyer, he would not have left it to

be inferred from such doubtful language ; nor would he have left the proportions in such uncertainty.

By supplying a single expression which may reasonably be supposed to have been in the testator's mind, we make the sentence perfect, consistent and plain. It then would read, *to Eliza Sawyer or* (in case of her death) *to her children then living*. This, we think, would express the true intention of the testator, making the fund payable to her, if alive at the death of her mother, or if not, to her children then living. The whole clause would then stand as follows, and in our opinion truly represent the will of the testator : " And at the decease of my sister Nabby Houghton, the one half of all of said fund so to be held for my said two sisters, their children and husbands, is to be held by my said trustees for the use of her the said Nabby's children, and to be paid or conveyed to her children or grandchildren in manner following, that is to say, one half of her said share to her daughter Eliza Sawyer, the wife of Ezra Sawyer, or " (in case of her death) " to her children then living ; and the other half of her said share to the children of E. W. Houghton, son of said Nabby Houghton, if any he have living, and if he have no children living, then to go to such person or persons as would be his legal heirs if he were deceased." This makes the whole provision intelligible, consistent with itself, with all the other clauses in the will, and with the general design and purpose of the testator. It gives full effect to all the language, and clothes every word with its appropriate meaning. The term " children " refers to Mrs. Sawyer's family, and the term " grandchildren " to the children of E. W. Houghton, who are made legatees to the exclusion of their father.

This is not a case in which authorities can have very great weight. And yet there are two or three having so great a similitude to it, that I cannot forbear to refer to them.

In the case of *Crooke* v. *De Vandes*, 9 Ves. 199, the words were, " All the remaining interest to be equally divided and paid yearly to my *two grandsons or their children*." It was held that the grandchildren could not take in the lifetime of their parents, but only by substitution.

In the recent case of *Montagu* v *Nucella*, 1 Russell, 165,

.he testator gave £10,000 to *each of his nephews and nieces* OR to their *respective child or children.* It was decided that the children took only by substitution in case of the death of their parents in the lifetime of the testator.

In the still more recent case of *O'Brien* v. *Heeney*, 2 Edw. Ch. R. 242, the words were, " then " (in an event which had happened) " the rents of said house to go *to my two sisters in Ireland* OR *to their children.*" The vice-chancellor held that the two sisters took to the exclusion of their children and not in common with them, and that the children could only take by substitution in the event of the death of their parents.

The above decisions confirm our construction, and, as far as this case may be governed by authorities, are decisive of it.

But it is suggested by the trustee, in his answer, that the Court should not compel him to pay over the funds to the present plaintiffs until the husband makes and secures an adequate provision for the support of the wife.

This presents an entirely new subject in this Commonwealth. Chancery is here yet in its infancy. And although its growth has been rapid, yet we still have but a limited equity jurisdiction. This subject seems to be appropriate to the broadest and most general chancery powers.

There is no doubt that in England such power not only exists, but is very frequently exercised. It there is not limited to property holden in trust ; nor to cases where chancery is appealed to for the purpose of lending its aid to enable a party to enforce payment. But in all cases of choses in action belonging to the wife, whether they were hers before coverture or accrued afterwards, and of legacies and bequests, where husband and wife attempt to recover them in other tribunals, chancery will interfere and compel the husband to make suitable provision for his wife or enjoin him against proceeding in his suits. Clancy on Husband and Wife, 456 *et seq.*

The same practice prevails to some extent in New York ; but is repudiated in other States. It would seem to be repugnant to what we deem the legal rights of the husband, and would never be carried so far here as it has been in England.

We do not mean to say that, with our limited jurisdiction, we do not, in a case like the present, possess the power. We

have unquestionable jurisdiction over the trust fund, and this would seem to be incidentally involved in that general power. We might refuse to decree a payment over of the fund, till the husband made a satisfactory provision for the wife. But I shall not enter into the discussion of the subject, because we are clearly of opinion that the present case does not call for the exercise of the power.

The wife does not desire to have the property secured to her separate use, nor to have any independent provision made for her support ; but, on the contrary, voluntarily joins her husband in this suit, and expressly offers to waive any such claim. Neither the children nor friends of the wife wish for such a provision. In England, although a more formal mode of ascertaining the wife's wishes might be adopted, yet, when ascertained, a provision would never be required against her desire.

Besides, such a course would be at variance with the intention of the testator. It would be adding a new and distinct provision to his will. The testator, when he made his will, knew that Mrs. Sawyer was married ; knew the character of her husband ; manifested no distrust of him, as he did of his nephew E. W. Houghton ; but, on the contrary, placed confidence in him. If he had intended to secure the bequest for the exclusive benefit of Mrs. Sawyer, he might easily have given it to her separate use. He understandingly and intentionally omitted to do so. And we should not be justified in imposing terms or conditions which he did not choose to impose.

There is no suggestion that the character of Ezra Sawyer has changed since the death of the testator ; or that he is improvident, so that the property will not be safe in his hands.

On the whole, we are all of opinion, that the plaintiffs are entitled to one quarter of the trust fund, as claimed.

All the costs must be charged upon the general fund.

The trustee has faithfully discharged his duty ; and should not be subjected to the expenses of a judgment which he rightfully requires to justify him in paying over the fund.

The expenses of this suit stand upon the same ground as the general expenses of administration. The testator intended

to make an apportionment among the objects of his bounty, of his property, after paying the expenses of settling his estate. To charge this cost upon the portion of any one or any class of the legatees, would be to change the proportions fixed by the testator himself. There is no reason why the expense of removing an ambiguity created by himself, should fall upon any one of the legatees rather than the others. It must be a general charge upon the whole estate. The authorities are full upon this point. *Studholme* v. *Hodgson, et al.* 3 P. Wms. 303 ; *Pearson* v. *Pearson*, 1 Scho. & Lefr. 12 ; *Barrington* v. *Tristram*, 6 Ves. 345 ; *Joliffe* v. *East*, 3 Bro. C. C. 25.